**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **Crestone IP Management, LLC**<br><br>    **Plaintiff,**<br><br> **v.**<br><br>**HP Inc.**<br><br>    **Defendant.** | **Civil Action No. 2:26-cv-586**<br><br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

Plaintiff Crestone IP Management, LLC ("Crestone" or "Plaintiff") brings this Complaint against Defendant HP Inc. ("HP" or "Defendant") for infringement of U.S. Patent Nos. 10,771,012 ("the '012 patent"), 8,261,072 ("the '072 patent"), 9,288,534 ("the '534 patent"), and 7,599,231 ("the '231 patent") (collectively, the "Asserted Patents"). Plaintiff, on personal knowledge of its own acts, and on information and belief as to all others based on investigation, alleges as follows:

<u>**SUMMARY OF THE ACTION**</u>

1. This is a patent infringement suit relating to HP's unauthorized and unlicensed use of the Asserted Patents. The technologies claimed in the Asserted Patents are used by HP in one or more of its products, including but not limited to various HP desktop computers, laptop computers, and chromebooks, collectively referred to as the "Accused Products."

2. Crestone brings this action to put a stop to HP's unauthorized and unlicensed use of the inventions claimed in the Asserted Patents.

1

## THE PARTIES

3.      Plaintiff Crestone is a limited liability company organized under the laws of the State of Delaware with a place of business at 401 N. Michigan Ave. Chicago, IL 60611.

4.      Crestone is led by a team of experienced technology and intellectual property professionals, many of whom possess more than twenty years of experience in the telecommunications, semiconductor, licensing, and patent industries.  Members of Crestone's leadership have participated in the development, management, licensing, and monetization of significant patent portfolios throughout their careers.

5.      Several members of Crestone's leadership trace their professional roots to organizations that played important roles in the evolution of modern telecommunications technologies, including Bell Labs, Nortel Networks, and other industry pioneers.  Through this experience, Crestone maintains a direct connection to generations of innovation that helped shape today's communications and semiconductor industries.

6.      Crestone acquired the Asserted Patents as part of its mission to preserve, manage, and monetize valuable intellectual property assets developed by pioneering technology companies.  Crestone thus became the successor-in-interest to the rights associated with, and now holds all substantial rights in, the Asserted Patents.

7.      The Asserted Patents originate from a distinguished portfolio of semiconductor and telecommunications technologies developed over decades by Microchip Technology Incorporated and its affiliates, including but not limited to Microchip Technology Ireland Limited, Atmel Corporation, Silicon Storage Technology, and Microsemi Corporation.  These companies have long been recognized as leaders in the design and development of

2

microcontrollers, semiconductor devices, embedded systems, communications technologies, and related innovations that have become integral to modern electronic products.

8.      Through decades of research and development, Microchip Technology Incorporated, together with its subsidiaries and affiliates, including companies such as Atmel Corporation and Microsemi Corporation, invested substantial resources in creating technologies that advanced the state of the art in semiconductor design, communications systems, signal processing, embedded control systems, and related fields.  These innovations have been incorporated into countless commercial products deployed throughout the world.

9.      On information and belief, HP is a corporation organized and existing under the laws of Delaware with its principal place of business and headquarters at 501 Page Mill Road, Palo Alto, CA 94304.  HP is registered to do business in the state of Texas and has a registered agent for service of process, CT Corporation Service, located at 1999 Bryan St. Ste. 900, Dallas, TX 75201.

10.      On information and belief, HP develops, designs, and/or manufactures products in the United States, including in this District, that use the structures and/or methods of the Asserted Patent; and/or use structures and/or methods of the Asserted Patents in the United States, including in this District, to make products; and/or distribute, market, sells, or offers to sell in the United States and/or import products into the United States, including in this District, that were manufactured using the patented methods or include the patented structures.  HP also owns and operates the website www.hp.com through which it offers for sale, sells, offered for sale, and/or sold products and services that infringe the Asserted Patents. Additionally, HP introduces those products into the stream of commerce knowing that they will be sold and/or used in this District and elsewhere in the United States.

## JURISDICTION AND VENUE

11. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over HP under the laws of the State of Texas, due at least to their substantial business in Texas and in this District. HP has purposefully and voluntarily availed themselves of the privileges of conducting business in the United States, in the State of Texas, and in this District by continuously and systematically placing goods into the stream of commerce through an established distribution channel with the expectation that they will be purchased by consumers in this District. In the State of Texas and in this District, HP, directly and/or through intermediaries: (i) performs at least a portion of the infringements alleged herein; (ii) develops, designs, and/or manufactures products according to claims of each Asserted Patent; (iii) distributes, markets, sells, or offers to sell products that embody the Asserted Patent; and/or (iv) imports products formed according to the processes/methodologies of the Asserted Patents.

13. On information and belief, HP is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, HP is subject to this Court's specific and general personal jurisdiction because HP maintains regular and established places of business in the Eastern District of Texas, including but not limited to 6901 Windcrest Dr, Plano, TX 75024.

14. HP Inc.'s 2025 Tax Statement from the Collin County Tax Assessor/Collector in Texas states that HP Inc. has various locations within Collin County with a taxable value of $10,253,356 in 2025:

**Scott Grigg**
**Tax Assessor\Collector**
**Collin County**
P.O. Box 8046
McKinney, TX 75070



Physical Location:
2300 Bloomdale Road Ste. 2324
McKinney, TX 75071
Ph: 972-547-5020

**TAX STATEMENT 2025+**

1
V1.1

STATEMENT DATE:  02/04/2026
ACCOUNT:  P900021638271

LEGAL:  BPP AT VARIOUS LOCATIONS CPL SPL

OWNER:  HP INC
PARCEL ADDRESS:  VARIOUS LOCATIONS CPL SPL
EXEMPTION CODES:

PIDN:  2735605
ACRES:  0

| APPRAISED VALUE |
| --- |
| 10,253,356 |

| TAXING ENTITIES | EXEMPTION AMOUNT | TAXABLE VALUE | TAX RATE PER $100 | BASE TAX | PENALTY & INTEREST |
| --- | --- | --- | --- | --- | --- |
| COLLIN COUNTY | 0 | 10,253,356 | 0.149343 | 0.00 | 0.00 |
| PLANO CITY | 0 | 10,253,356 | 0.437600 | 0.00 | 0.00 |
| COLLIN COLLEGE | 0 | 10,253,356 | 0.081220 | 0.00 | 0.00 |
| PLANO ISD | 0 | 10,253,356 | 1.039550 | 0.00 | 0.00 |
| | | | SUBTOTAL | 0.00 | 0.00 |
| | | | PRIOR YEARS | 0.00 | |
| | | | TOTAL AMOUNT DUE | 0.00 | |

15. HP Inc. was assessed and has paid on average $200,000 per year from 2019 through 2026 to Collin County for property taxes for various locations in Collin County, Texas, valued between $9.6 million and $15.1 million:

## DUPLICATE RECEIPT

**DATE:** 3/3/26
**ACCOUNT:** P900021638271
OWNER: HP INC
PARCEL ADDRESS:  VARIOUS LOCATIONS CPL SPL
EXEMPTION CODES:
LAWSUIT:
BKRPTCY:

LEGAL:  BPP AT VARIOUS LOCATIONS CPL SPL

PIDN: 2735605
ACRES:  0

HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004-4714

RECEIPT #: 52725814        CHECK #: 87396586                    DEPOSIT #: 202601229981-2025/lockbox

| YEAR | TAXING ENTITIES | TAXABLE VALUE | TAX RATE PER $100 | PAY TYPE | DATE PAID | BASE TAX PAID | PENALTY & INTEREST PAID |
|------|-----------------|---------------|-------------------|----------|-----------|---------------|-------------------------|
| 2025 | COLLIN COUNTY | 10,253,356.00 | 0.149343 | L | 1/21/26 | $15,312.67 | $0.00 |
| 2025 | PLANO CITY | 10,253,356.00 | 0.437600 | L | 1/21/26 | $44,868.69 | $0.00 |
| 2025 | COLLIN COLLEGE | 10,253,356.00 | 0.081220 | L | 1/21/26 | $8,327.78 | $0.00 |
| 2025 | PLANO ISD | 10,253,356.00 | 1.039550 | L | 1/21/26 | $106,588.76 | $0.00 |

AMOUNT TENDERED    $175,097.90
AMOUNT PAID
BASE TAX    $175,097.90
TOTAL PAID    $175,097.90

PAYER: HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004-4714

REMAINING AMOUNT DUE
AS OF 3/3/26
0.00

**Collin County**
**SCOTT GRIGG**
**P.O. Box 8046**
**McKinney, TX 75070**
**972-547-5020**

OWNER: HP INC

2735605

6

**DUPLICATE RECEIPT**

DATE: 3/3/26
ACCOUNT: P900021638271
OWNER: HP INC
PARCEL ADDRESS:   VARIOUS LOCATIONS CPL SPL
EXEMPTION CODES:
LAWSUIT:
BKRPTCY:

LEGAL:  BPP AT VARIOUS LOCATIONS CPL SPL

PIDN:  2735605
ACRES:  0

HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004-4714

RECEIPT #: 52725846      CHECK #: 84871359

DEPOSIT #: 202501301305-2024/lockbox

| YEAR | TAXING ENTITIES | TAXABLE VALUE | TAX RATE PER $100 | PAY TYPE | DATE PAID | BASE TAX PAID | PENALTY & INTEREST PAID |
|---|---|---|---|---|---|---|---|
| 2024 | COLLIN COUNTY | 12,248,681.00 | 0.149343 | L | 1/29/25 | $18,292.55 | $0.00 |
| 2024 | PLANO CITY | 12,248,681.00 | 0.417600 | L | 1/29/25 | $51,150.49 | $0.00 |
| 2024 | COLLIN COLLEGE | 12,248,681.00 | 0.081220 | L | 1/29/25 | $9,948.38 | $0.00 |
| 2024 | PLANO ISD | 12,248,681.00 | 1.042450 | L | 1/29/25 | $127,686.38 | $0.00 |

AMOUNT TENDERED    $207,077.80
AMOUNT PAID

BASE TAX  $207,077.80

TOTAL PAID  $207,077.80

PAYER: HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004-4714

**DUPLICATE RECEIPT**

DATE: 3/3/26
ACCOUNT: P900021638271
OWNER: HP INC
PARCEL ADDRESS:   VARIOUS LOCATIONS CPL SPL
EXEMPTION CODES:
LAWSUIT:
BKRPTCY:

LEGAL:  BPP AT VARIOUS LOCATIONS CPL SPL

PIDN:  2735605
ACRES:  0

HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004-4714

RECEIPT #: 52725852      CHECK #: 82117056

DEPOSIT #: 202402061937-2023/lockbox

| YEAR | TAXING ENTITIES | TAXABLE VALUE | TAX RATE PER $100 | PAY TYPE | DATE PAID | BASE TAX PAID | PENALTY & INTEREST PAID |
|---|---|---|---|---|---|---|---|
| 2023 | COLLIN COUNTY | $9,955,470.00 | 0.149343 | L | 1/31/24 | $14,867.80 | $0.00 |
| 2023 | PLANO CITY | $9,955,470.00 | 0.417600 | L | 1/31/24 | $41,574.04 | $0.00 |
| 2023 | COLLIN COLLEGE | $9,955,470.00 | 0.081220 | L | 1/31/24 | $8,085.83 | $0.00 |
| 2023 | PLANO ISD | $9,955,470.00 | 1.077850 | L | 1/31/24 | $107,305.03 | $0.00 |

AMOUNT TENDERED    $171,832.70
AMOUNT PAID

BASE TAX  $171,832.70

TOTAL PAID  $171,832.70

PAYER: HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004-4714

**DUPLICATE RECEIPT**

DATE: 3/3/26  
ACCOUNT: P900021638271  
OWNER: HP INC  
PARCEL ADDRESS: VARIOUS LOCATIONS CPL SPL  
EXEMPTION CODES:  
LAWSUIT:  
BKRPTCY:  

LEGAL: BPP AT VARIOUS LOCATIONS CPL SPL  

PIDN: 2735605  
ACRES: 0  

HP INC  
% TAX DEPARTMENT  
5555 WINDWARD PKWY STE A3B007  
ALPHARETTA GA 30004-4714  

RECEIPT #: 52725855        CHECK #: 79372160                     DEPOSIT #: 202212058795-2022/lockbox

| YEAR | TAXING ENTITIES | TAXABLE VALUE | TAX RATE PER $100 | PAY TYPE | DATE PAID | BASE TAX PAID | PENALTY & INTEREST PAID |
|------|-----------------|---------------|-------------------|----------|-----------|---------------|-------------------------|
| 2022 | COLLIN COUNTY | 15,187,084.00 | 0.152443 | L | 11/30/22 | $23,151.65 | $0.00 |
| 2022 | PLANO CITY | 15,187,084.00 | 0.417600 | L | 11/30/22 | $63,421.26 | $0.00 |
| 2022 | COLLIN COLLEGE | 15,187,084.00 | 0.081220 | L | 11/30/22 | $12,334.95 | $0.00 |
| 2022 | PLANO ISD | 15,187,084.00 | 1.259750 | L | 11/30/22 | $191,319.29 | $0.00 |

AMOUNT TENDERED    $290,227.15  
AMOUNT PAID  
BASE TAX  $290,227.15  
TOTAL PAID  $290,227.15  

PAYER: HP INC  
% TAX DEPARTMENT  
5555 WINDWARD PKWY STE A3B007  
ALPHARETTA GA 30004-4714  

**DUPLICATE RECEIPT**

DATE: 3/3/26  
ACCOUNT: P900021638271  
OWNER: HP INC  
PARCEL ADDRESS: VARIOUS LOCATIONS CPL SPL  
EXEMPTION CODES:  
LAWSUIT:  
BKRPTCY:  

LEGAL: BPP AT VARIOUS LOCATIONS CPL SPL  

PIDN: 2735605  
ACRES: 0  

HP INC  
% TAX DEPARTMENT  
5555 WINDWARD PKWY STE A3B007  
ALPHARETTA GA 30004-3895  

RECEIPT #: 52725869        CHECK #: 77343823                     DEPOSIT #: 202202083178-2021/lockbox

| YEAR | TAXING ENTITIES | TAXABLE VALUE | TAX RATE PER $100 | PAY TYPE | DATE PAID | BASE TAX PAID | PENALTY & INTEREST PAID |
|------|-----------------|---------------|-------------------|----------|-----------|---------------|-------------------------|
| 2021 | COLLIN COUNTY | 13,203,044.00 | 0.168087 | L | 1/31/22 | $22,192.60 | $0.00 |
| 2021 | PLANO CITY | 13,203,044.00 | 0.446500 | L | 1/31/22 | $58,951.59 | $0.00 |
| 2021 | COLLIN COLLEGE | 13,203,044.00 | 0.081222 | L | 1/31/22 | $10,723.78 | $0.00 |
| 2021 | PLANO ISD | 13,203,044.00 | 1.320750 | L | 1/31/22 | $174,379.20 | $0.00 |

AMOUNT TENDERED    $266,247.17  
AMOUNT PAID  
BASE TAX  $266,247.17  
TOTAL PAID  $266,247.17  

PAYER: HP INC  
% TAX DEPARTMENT  
5555 WINDWARD PKWY STE A3B007  
ALPHARETTA GA 30004-3895  

8

**DUPLICATE RECEIPT**

DATE: 3/3/26
ACCOUNT: P900021638271
OWNER: HP INC
PARCEL ADDRESS: VARIOUS LOCATIONS CPL SPL
EXEMPTION CODES:
LAWSUIT:
BKRPTCY:

LEGAL: BPP AT VARIOUS LOCATIONS CPL SPL

PIDN: 2735605
ACRES: 0

HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004

RECEIPT #: 52725874    CHECK #: 75299316    DEPOSIT #: 202102094763-2020/lockbox

| YEAR | TAXING ENTITIES | TAXABLE VALUE | TAX RATE PER $100 | PAY TYPE | DATE PAID | BASE TAX PAID | PENALTY & INTEREST PAID |
|------|-----------------|---------------|-------------------|----------|-----------|---------------|--------------------------|
| 2020 | COLLIN COUNTY | $9,625,231.00 | 0.172531 | L | 1/29/21 | $16,606.51 | $0.00 |
| 2020 | PLANO CITY | $9,625,231.00 | 0.448200 | L | 1/29/21 | $43,140.29 | $0.00 |
| 2020 | COLLIN COLLEGE | $9,625,231.00 | 0.081222 | L | 1/29/21 | $7,817.81 | $0.00 |
| 2020 | PLANO ISD | $9,625,231.00 | 1.323750 | L | 1/29/21 | $127,414.00 | $0.00 |

AMOUNT TENDERED    $194,978.61
AMOUNT PAID
BASE TAX  $194,978.61
TOTAL PAID  $194,978.61

PAYER: HP INC
% TAX DEPARTMENT
5555 WINDWARD PKWY STE A3B007
ALPHARETTA GA 30004

(All available at

https://taxpublic.collincountytx.gov/Accounts/AccountDetails?taxAccountNumber=P90002163 8271 ).

16.    On information and belief, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 with respect to HP because HP has committed, and continues to commit, acts of infringement in this District and has a regular and established place of business in this District. For example, HP maintains a regular and established place of business at 6901 Windcrest Dr, Plano, TX 75024.

17.    HP Inc. has not contested jurisdiction and venue in this District in numerous other patent infringement cases brought against it in this District over the past several years.  For example:

- In *Wilus Institute of Standards and Technology Inc. v. HP Inc.*, HP's answer to the complaint did not contest that venue properly lies in this District for the action.  (C.A. 2:25-cv-00069-JRG (EDTX), Dkt. No. 15 at ¶ 19).  Therein, HP also admitted that in the past, it admitted or did not contest proper venue in this District and did not contest that it has a regular and established place of business in this District.  (C.A. 2:25-cv-00069-JRG (EDTX), Dkt. No. 15 at ¶ 20).

18.    Notably, even in cases where HP had sought to contest venue, it subsequently revised its initial position, dropping its efforts to dispute that venue is appropriate in this District.  For example:

- In *General Video, LLC v. HP Inc.*, after the parties engaged in venue discovery, HP withdrew its previously-filed Motion to Dismiss for Improper Venue, which contended that HP did not have a regular and established place of business in this District.  Civil Action No. 5:24-cv-00122-RWS (LEAD CASE), Dkt. No. 82 (E.D. Tex. June 19, 2025).

- Similarly, in *AX Wireless LLC v. HP Inc.*, after venue discovery, HP withdrew its motion to dismiss for improper venue, which likewise contended that HP did not have a regular and established place of business in this District; the Court found that "HP withdrew its motion to dismiss after discovery revealed that HP does maintain a regular and established place of business in this district."  Case 2:22-cv-00279-RWS-RSP, Dkt. No. 100 (E.D. Tex. Dec. 11, 2023).

19.    On information and belief, HP currently employs a large number of persons at regular and established business locations in the Eastern District of Texas.  For example,

according to information available on LinkedIn,[1] the following exemplary individuals each identify themselves as high-level HP employees and list themselves as being located at a work location within the Eastern District of Texas:



https://www.linkedin.com/in/bryan-mckown-8a0b7566/

https://www.linkedin.com/in/barbbartonweiszhaar/

https://www.linkedin.com/in/nick-rasberry/

## U.S. PATENT NO. 10,771,012

20.    The '012 patent is titled "Hybrid RC/crystal oscillator."  A true and correct copy of the'012 patent is attached as Exhibit A.

21.    The '012 patent issued to inventor Jason Sachs on September 8, 2020 from U.S. Patent Application Ser. No. 16/587,509, filed September 30, 2019 as a continuation of U.S. Patent Application Ser. No. 15/491,803, filed on Apr. 19, 2017.

22.    The '012 patent is valid and enforceable under the United States Patent Laws.

23.    Crestone owns, by assignment, the entire right, title, and interest in and to the '012 patent, including the right to collect for past damages.

---

[1] All linked profiles located, LinkedIn accessed, and images captured on June 26, 2026.

11

24.    The '012 patent is generally related to integrated circuit devices with integrated oscillators and external resonant elements.

25.    Modern integrated circuits need a clock source that combines the accuracy of a crystal reference with the flexibility of a tunable oscillator. Conventional crystal-based clocking can be slower to start, more sensitive to external component failure, and less flexible in producing different output frequencies.

26.    To avoid the disadvantages of relying exclusively on an external crystal or a tunable integrated oscillator to provide the appropriate frequency control, the '012 patent teaches a hybrid approach that uses both an internal oscillator and an external crystal to provide a system combining the advantages of each.  Specifically, the crystal is used as an external resonant reference element so that the circuit compares the crystal response against the tunable oscillator output and adjusts the oscillator frequency to maintain accurate, fault-tolerant operation.

27.    The '012 patent contains 4 independent claims and 20 total claims, covering processors and microcontrollers with integrated oscillators. Claim 19 of the '012 patent reads:

> 19.  A system, comprising:
>
> a semiconductor device, comprising a first external pin and an internal oscillator; and
>
> an external resonant element coupled to the semiconductor device at least through the first external pin;
>
> wherein the internal oscillator comprises:
>
> a tunable oscillator communicatively coupled with the first pin and configured to provide an oscillation signal to a portion of the semiconductor device;
>
> a phase detector circuit communicatively coupled with an output of the tunable oscillator and an input to the internal oscillator; and
>
> an oscillator controller circuit configured to adjust frequency of the tunable oscillator based upon phase detection between

output of the tunable oscillator and output of the external resonant element received at the input to the internal oscillator,

wherein the oscillator controller circuit is configured to use the output of the external resonant element to adjust frequency of the tunable oscillator during the entire operation of the tunable oscillator.

28. This claim, as a whole, provides significant benefits and improvements to the function of the system, e.g., improved reliability during start-up, improved accuracy compared to other tunable internal oscillators, and fast startup and high-frequency stability for frequency output.

## U.S. PATENT NO. 8,261,072

29. The '072 patent is titled "Method and system for secure external TPM password generation and use."  A true and correct copy of the '072 patent is attached as Exhibit B.

30. The '072 patent issued to inventors Kerry D. Maletsky and Nathanael J. Bohlmann on September 4, 2012 from U.S. Patent Application Ser. No. 11/607,504, filed November 30, 2006, claiming ultimate priority to U.S. Provisional Application No. 60/785,870, filed March 24, 2006.

31. The '072 patent is valid and enforceable under the United States Patent Laws.

32. Crestone owns, by assignment, the entire right, title, and interest in and to the '072 patent, including the right to collect for past damages.

33. The '072 patent is generally related to computer security.

34. Traditional security mechanisms such as passwords, encryption keys, digital certificates, and firewalls, have numerous weaknesses that have made them increasingly insufficient to provide sufficient security in high-risk environments.

35. As a result, trusted platform modules ("TPMs") have become increasingly employed as a superior solution embedded into product offerings to provide vastly enhanced

13

security. Additionally, several new devices that enhance security and user experience have been added, especially devices adding secure biometric capabilities.

36. But even when a TPM is used in the platform, the use of devices external to the TPM creates opportunities for the detection of codes and secrets  when they are communicated, requiring a tradeoff between security of the system and its accessibility for the user during normal operation.

37. In order to address those weaknesses, the '072 patent teaches the use of a unique technique to generate secure codes in a remote device of a system that are securely conveyed to the TPM without exposing them to software attack or malware during normal operation. TPM keys require usage authorization information to be attached to them for their associated use., and that usage authorization information is generated by the secure generator and sent to the TPM when the key is generated.  Once received, the TPM can also be used to securely authenticate subsequent uses of the key, as both the remote device and the TPM recognize a common access code or secret.

38. The '072 patent contains 2 independent claim and 48 total claims, covering a trusted platform module.  Claim 1 of the '072 patent reads:

1. A computer system comprising:

one or more central processing units connected to one or more internal system busses;

random access memory;

read-only memory;

at least one input/output adapter, which supports various I/O devices;

a user interface adapter;

a trusted platform module configured to perform operations comprising:

receiving a secure access code from a remote device outside of the trusted platform module;

receiving usage authorization information generated by a secure generator, the usage authorization information being attached to the secure access code;

recognizing the secure access code; and

using the secure access code as a parameter for various trusted platform module commands.

39. This claim, as a whole, provides significant benefits and improvements to the function of the computing devices by markedly improving system security during normal operation without decreasing usability and accessibility for the user.

**U.S. PATENT NO. 9,228,534**

40. The '534 patent is titled "Systems and methods for operating media devices." A true and correct copy of the '534 patent is attached as Exhibit C.

41. The '534 patent issued to inventors Gene Sheridan, Hooman Kashef Hamadani, and Ramanathan Subramaniam on March 15, 2016 from U.S. Patent Application Ser. No. 13/106,135, filed May 12, 2011, claiming ultimate priority to U.S. Provisional Application Ser. No. 61/333,896, filed May 12, 2010.

42. The '534 patent is valid and enforceable under the United States Patent Laws.

43. Crestone owns, by assignment, the entire right, title, and interest in and to the '534 patent, including the right to collect for past damages.

44. The '534 patent generally relates to interconnected media devices.

45. Consumer electronics devices that access, store, and/or play various media have proliferated in recent years, as have wireless networks. However, many types of conventional media players (such as TVs and audio systems) typically lack networking capability, while other network-enabled media players may require the addition expensive additional hardware such as a specialized processor or keyboard. In addition, being able to have common control of these various devices in an efficient and non-cumbersome fashion is also a challenge, with even

15

so-called "universal remote controllers" both requiring yet another device and typically being limited to line-of-sight operation.

46.    While the use of mobile computing devices such as smartphones and tablets has gone a long way towards solving the line-of-sight problem for networked devices, the problem remains for media devices that lack the ability to communicate with such mobile computing device.  And even when a media device was able to communicate with such a mobile computing device, the media device had to be able to provide a suitably usable interface on the mobile device that enabled control of the functions available on the media device.  But even such an interface was only able to provide a limited sort of control and did not permit the media player to access rich media from various sources.  Moreover, the mobile computing devices and media devices themselves, as well as their underlying communication protocols, would be frequently modified and improved—meaning that any solution that worked for a current set of devices might not be able to accommodate the next generation of devices.

47.    In an effort to solve these problems, the '534 patent teaches, in essence, using the a mobile computing device to bridge the two-way communication gaps between media sources and media players.  More specifically, the remote controller communicates separately with a media player and a media source, each using a distinct wireless communication link.  In communicating with the media player, the controller sends control commands and receives information from the media player about a set of controls that the media player supports.  In communicating with media sources, the controller sends media sourcing commands and receives information describing content available via that media source.  The controller analyzes information received from the media player to determine compatible content available via the media source and provides a user interface capable of controlling the media player based

16

on the controls that the media player supports, selecting compatible content from the media source, and displaying compatible content from the media source.

48.    The '534 patent contains 3 independent claims and 17 total claims, covering remote control of media sources and media players.  Claim 6 of the '534 patent reads:

6. A remote controller for communicating with a media source and a media player, the remote controller comprising:

a network interface for:

(i) communicating with the media player via a first wireless communication link,

wherein communicating comprises transmitting media player commands to the media player and receiving first information therefrom describing a set of controls supported by the media player; and

(ii) communicating with one or more media sources via a second wireless communication link

wherein communicating comprises transmitting media source commands to the one or more media sources and receiving therefrom second information describing content items available by the one or more media sources;

a processor for:

(i) analyzing the received first information so as to identify at least one feature of the media player

(ii) determining compatible content available on the one or more media sources wherein the compatible content is in a format that is compatible with a feature of the media player,

wherein the feature is selected from a group consisting of: volume control, picture control, rewind, and fast forward, and

(iii) building a user interface for controlling the media player using the set of controls

(iv) creating a user interface for controlling the media player and for selecting compatible content from the one or more media sources,

wherein the user interface is created based on the set of controls supported by the media player and built to display content from the one or more media

17

sources determined to be compatible with the media player.

49.    This claim, as a whole, provides significant benefits and improvements to the function of a remote controller, e.g., improving future compatibility, maintaining existing compatibility, reducing the proliferation of unnecessary devices, and providing a protocol-agnostic system for unified device control and media interoperability from a single point.

## U.S. PATENT NO. 7,599,231

50.    The '231 patent is titled "Adaptive regulator for idle state in a charge pump circuit of a memory device."  A true and correct copy of the '231 patent is attached as Exhibit D.

51.    The '231 patent issued to inventors Marco Passerini, Stefano Sivero, Andrea Sacco, and Monica Marziani on October 7, 2009 from U.S. Patent Application Ser. No. 11/548,319, filed October 11, 2006.

52.    The '231 patent is valid and enforceable under the United States Patent Laws.

53.    Crestone owns, by assignment, the entire right, title, and interest in and to the '231 patent, including the right to collect for past damages.

54.    The '231 patent generally relates to generating adaptive idle voltage signals in electronic devices.

55.    Memory devices often need high voltages generated by charge-pumps for operations like programming, erasing, or reading, but switching between read and program operations can cause sudden voltage changes and charge-sharing effects.  These disturbances can create voltage spikes or drops on supply lines, which may degrade read, program, and erase performance.

56.    To address this problem, the '231 patent teaches a controlled transition scheme that uses an intermediate idle voltage state to reduce disturbances when high-voltage signals are

applied or removed. Additionally, this patent teaches compensating for undesirable voltage supply line effects or disturbances by providing an idle state for memory cells at a voltage well below that required to turn on the switching stage, which isolates memory cells that are not being modified from disturbances in supply voltages.

57.     The '231 patent contains 3 independent claims and 19 total claims, covering apparatuses with modifiable memory elements.  Claim 12 of the '231 patent reads:

> 12.  An apparatus comprising:
>
> a read node to receive a first voltage;
>
> a modify node;
>
> a switching stage coupled between the read node and the modify node, the switching stage including a first node; and
>
> an adaptive voltage generator configured to apply a second voltage having a first value corresponding to a value of the first voltage to the modify node before the switching stage couples the first node to the modify node

58.     This claim, as a whole, provides significant benefits and improvements to the function of the electronic device by providing a modified idle state that reduces the undesirable effects of switching disturbances caused by sudden voltage changes in a line or node and allows for faster transitions between read, program and erase operations.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,771,012

59.     Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

60.     The '012 patent is valid and enforceable under the United States patent laws.

61.     Crestone owns, by assignment, all right, title, and interest in and to the '012 patent, including the right to collect for past damages.

62.     On information and belief, HP has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more

19

claims of the '012 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more desktop computers (including but not limited to the HP ENVY Desktop, HP Pavilion Desktop, HP Slim Desktop, and HP OMEN 35L Gaming Desktop) and laptop computers (including but not limited to the HP OMEN Gaming Laptop 16t-am000, 16" and the HP OmniDesk Slim) (collectively, the "'012 Accused Products"), including as an example the HP OMEN Gaming Laptop 16t-am000, 16".

63.　A claim chart demonstrating HP's infringement of certain exemplary claims of the '012 patent by the HP OMEN Gaming Laptop 16t-am000, 16" is attached hereto as Exhibit E.

64.　HP's '012 Accused Products infringe and continue to infringe one or more claims of the '012 patent during the pendency of the '012 patent.

65.　HP's infringement of the '012 patent was, and continues to be, done with knowledge of the '012 patent and with knowledge of Crestone's contention that HP is infringing the '012 patent. On or about July 29, 2025, a representative of Crestone provided actual notice to HP of the '012 patent and actual notice of its infringement thereof via certain of its desktop and laptop computers. Follow-up communications were sent to HP on December 17, 2025; February 10, 2026; and February 18, 2026. HP's infringement of the '012 patent is thus willful and deliberate at least as of July 29, 2025, entitling Crestone to enhanced damages and attorneys' fees.

66.　HP's infringement of the '012 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

67.　Crestone has been damaged by HP's infringement of the '012 patent and will continue to be damaged unless HP is enjoined by this Court. Crestone has suffered and

continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Crestone, and public interest is not disserved by an injunction.

68.    Crestone is entitled to recover from HP all damages that Crestone has sustained as a result of HP's infringement of the '012 patent, including without limitation and/or not less than a reasonable royalty.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,261,072**

69.    Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

70.    The '072 patent is valid and enforceable under the United States patent laws.

71.    Crestone owns, by assignment, all right, title, and interest in and to the '072 patent, including the right to collect for past damages.

72.    On information and belief, HP has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '072 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more laptop computers having a trusted platform module (including but not limited to the HP EliteBook Ultra G1i 14 inch Notebook Next Gen AI PC Wolf Pro Security Edition, HP ZBook X G1i 16 Mobile Workstation PC, HP Elite x360 1040 14 inch G11 2-in-1 Notebook PC Wolf Pro Security Edition, HP ZBook 8 G1i 16 Mobile Workstation PC, HP ProBook 4 G1i 16 inch Notebook AI PC, HP ZBook Fury G1i 16 Mobile Workstation PC with 3 Yr Warranty & Wolf Pro Security) (collectively the "'072 Accused Products").

73.    A claim chart demonstrating HP's infringement of certain exemplary claims of the '072 patent by the exemplary HP EliteBook Ultra G1i 14 inch Notebook Next Gen AI PC Wolf Pro Security Edition is attached hereto as Exhibit F.

74.    HP's '072 Accused Products infringe and continue to infringe one or more claims of the '072 patent during the pendency of the '072 patent.

75.    HP's infringement of the '072 patent was, and continues to be, done with knowledge of the '072 patent and with knowledge of Crestone 's contention that HP is infringing the '072 patent.  On or about HP of the '072 patent and actual notice of its infringement thereof via certain of its computers.  Follow-up communications were sent to HP on December 17, 2025; February 10, 2026; and February 18, 2026.  HP's infringement of the '012 patent is thus willful and deliberate at least as of July 29, 2025, entitling Crestone to enhanced damages and attorneys' fees.

76.    HP's infringement of the '072 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

77.    Crestone has been damaged by HP's infringement of the '072 patent and will continue to be damaged unless HP is enjoined by this Court.  Crestone has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Crestone, and public interest is not disserved by an injunction.

78.    Crestone is entitled to recover from HP all damages that Crestone has sustained as a result of HP's infringement of the '072 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,288,534

79. Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

80. The '534 patent is valid and enforceable under the United States patent laws.

81. Crestone owns, by assignment, all right, title, and interest in and to the '534 patent, including the right to collect for past damages.

82. On information and belief, HP has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '534 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more Chromebook computers (including but not limited to the Fortis G1i 14 inch Chromebook, Fortis Flip G1i 11 inch Chromebook, Elite c640 14 G3 Chromebook Enterprise, Chromebook 14a-ne1047nr, Fortis G1i 11 inch Chromebook, Fortis Flip G1m 11 inch Chromebook, Elite c640 14 inch G3 Chromebook, Chromebook Plus Laptop 15at-nb000, 15.6", Chromebook 14a-nf0000nr, HP Chromebook Plus Laptop 14at-nf000, 14", HP Chromebook x360 14b-cd0010nr, HP Chromebook 14a-ne0047nr,HP Chromebook 14a-nk0141nr, HP Chromebook x360 14b-ce0141nr, HP Chromebook Plus x360 14c-ce0385nr, HP Chromebook Laptop 14at-nf000, 14" and HP Chromebook 14a-nf0050nr) (collectively the "'534 Accused Products"), including as one example the HP HP Chromebook 14a-nf0050nr.

83. A claim chart demonstrating HP's infringement of certain exemplary claims of the '534 patent by the exemplary HP Chromebook 14a-nf0050nr is attached hereto as Exhibit G.

84.    HP's '534 Accused Products infringe and continue to infringe one or more claims of the '534 patent during the pendency of the '534 patent.

85.    HP's infringement of the '534 patent was, and continues to be, done with knowledge of the '534 patent and with knowledge of Crestone 's contention that HP is infringing the '534 patent.  On or about March 26, 2026, a representative of Crestone provided actual notice to HP of the '534 patent and HP's infringement thereof via certain of HP's Chromebook computers.  HP's infringement of the '534 patent is thus willful and deliberate at least as of that date, entitling Crestone to enhanced damages and attorneys' fees.

86.    HP's infringement of the '534 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

87.    Crestone has been damaged by HP's infringement of the '534 patent and will continue to be damaged unless HP is enjoined by this Court.  Crestone has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Crestone, and public interest is not disserved by an injunction.

88.    Crestone is entitled to recover from HP all damages that Crestone has sustained as a result of HP's infringement of the '534 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,599,231

89.    Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

90.    The '231 patent is valid and enforceable under the United States patent laws.

91.    Crestone owns, by assignment, all right, title, and interest in and to the '231 patent, including the right to collect for past damages.

24

92.    On information and belief, HP has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '231 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more computers utilizing TLC 3D NAND flash memory ("'231 Accused Products"), including as one example the HP OMEN Gaming Laptop 16t-am000, 16".

93.    A claim chart demonstrating HP's infringement of certain exemplary claims of the '231 patent by the HP OMEN Gaming Laptop 16t-am000, 16" is attached hereto as Exhibit H.

94.    HP's '231 Accused Products infringe and continue to infringe one or more claims of the '231 patent during the pendency of the '231 patent.

95.    HP's infringement of the '231 patent was, and continues to be, done with knowledge of the '231 patent and with knowledge of Crestone 's contention that HP is infringing the '231 patent.  On or about June 26, 2026, a representative of Crestone provided actual notice to HP of the '231 patent and HP's infringement thereof via the HP computers utilizing TLC 3D NAND flash memory, including but not limited to HP OMEN Gaming Laptop 16t-am000, 16".  HP's infringement of the '231 patent is thus willful and deliberate at least as of that date, entitling Crestone to enhanced damages and attorneys' fees.

96.    HP's infringement of the '231 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

97.    Crestone has been damaged by HP's infringement of the '231 patent and will continue to be damaged unless HP is enjoined by this Court.  Crestone has suffered and

25

continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Crestone, and the public interest is not disserved by an injunction.

98.    Crestone is entitled to recover from HP all damages that Crestone has sustained as a result of HP's infringement of the '231 patent, including without limitation and/or not less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Crestone respectfully requests that this Court enter judgment in its favor as follows and award Crestone the following relief:

a.    a judgment declaring that Defendant has infringed one or more claims of each Asserted Patent in this litigation pursuant to 35 U.S.C. § 271, *et seq.*;

b.    an award of damages adequate to compensate Crestone for infringement of each Asserted Patent by Defendant, in an amount to be proven at trial, including supplemental post-verdict damages until such time as Defendant ceases its infringing conduct;

c.    a permanent injunction, pursuant to 35 U.S.C. § 283, prohibiting Defendant and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all affiliated entities, and all others acting in privity with Defendant, from committing further acts of infringement;

d.    a judgment requiring Defendant to make an accounting of damages resulting from its infringement of each Asserted Patent;

e.    enhanced damages for willful infringement;

f.    the costs of this action, as well as attorneys' fees as provided by 35 U.S.C. § 285;

g.   pre-judgment and post-judgment interest at the maximum amount permitted by law;

h.   all other relief, in law or equity, to which Crestone is entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: July 16, 2026

*/s/ Clifford Chad Henson*
C. Chad Henson (TX Bar No. 24087711)
**DEVLIN LAW FIRM LLC**
1411 North Trail Drive
Carrollton, TX  75006
Telephone: (302) 449–9010
Facsimile: (302) 353–4251
chenson@devlinlawfirm.com

*Attorney for Plaintiff Crestone IP Management, LLC*

27